IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ATLANTIC UNION BANK,

    Plaintiff,

v.                                                                        Civil Action No. 3:19cv405

JOHN L. HOLT, III
and
PATRICIA R. HOLT,

    *in personam,*
and

THUNDERBALL, her engines, tackle,
Equipment and appurtenances, etc.,

    *in rem,*

    Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Atlantic Union Bank's (the "Bank") Motion for Summary Judgment (in Personam) (the "Motion for Summary Judgment"). (ECF No. 26.) In personam Defendants John L. Holt, III, and Patricia R. Holt[1] (collectively, the "Holts") failed to timely respond. However, following a Court Order requesting briefing, (Jan. 23, 2020 Order, ECF No. 33), the Holts filed a February 14, 2020 response to the Motion for Summary Judgment, (Holts Resp., ECF No. 35).[2] The Bank also filed a response to the January

---

[1] For ease of reference, because the Holts share the same last name, the Court refers to John Holt, III, and Patricia Holt by their first name when referring to them individually.

[2] The Court admonishes Counsel for the Holts that such peripatetic representation of clients is strongly disfavored, and generally would result in the Court striking the documents. This is the Holts' first response to the Motion for Summary Judgment filed six months earlier. However, because the Court ordered additional briefing and because the Holts raised arguments

23, 2020 Order. (Bank Resp., ECF No. 34.) Because the Holts raised substantive arguments in their response to the Court's January 23, 2020 Order, the Court ordered the Bank to respond to the Holts' arguments. (Feb. 28, 2020 Order, ECF No. 37.) The Bank then replied to the Holts' response to the Court's January 23, 2020 Order. (ECF No. 38.)

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1333(1).[3] For the reasons that follow, the Court will grant the Motion for Summary Judgment as to Patricia Holt. Because John Holt, III, is involved in a pending bankruptcy proceeding, the Court will reserve consideration of the Motion for Summary Judgment against him until further order from the Bankruptcy Court.

## I. Factual and Procedural Background

### A. Factual Background[4]

Pursuant to a May 22, 2012 Promissory Note (the "2012 Note"), the Holts are indebted to the Bank.[5] (Mem. Supp. Mot. Sum. J. 2, ECF No. 27; Atkins Aff. Ex. A "2012 Note" 1, ECF

---

worth addressing in the interest of justice, the Court will consider their February response when rendering this opinion.

[3] Section 1333(1) provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333. In the Complaint, the Bank sought a "warrant . . . *in rem*, for the arrest of the vessel THUNDERBALL." (Compl. 3, ECF No. 1.)

[4] In ruling on the Motion for Summary Judgment, the Court will view the undisputed facts and all reasonable inferences therefrom in the light most favorable to the Holts as the nonmoving parties. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[5] Although the Holts originally executed the 2012 Note in favor of an entity known as Union First Market Bank, the record contains undisputed evidence that Union First Market Bank

2

No. 28-1.) The principal amount of the 2012 Note was $427,643.00. (Mem. Supp. Mot. Sum. J. 2; 2012 Note 1.) As collateral for the 2012 Note, the Holts named a June 30, 2005 Preferred Ship Mortgage (the "Ship Mortgage"), held by John Holt in favor of the Bank.[6] (Mem. Supp. Mot. Sum. J. 2; 2012 Note 2; Ship Mortgage 1.) The Ship Mortgage originally secured a principal amount of $350,000.00 for the vessel known as the Thunderball. (Ship Mortgage 1.) In making the 2012 Note, the Holts refinanced the Ship Mortgage. (2012 Note 2 (stating that "[t]his Note in part renews, modifies, refinances, and is given in substitution for a certain Promissory Note dated 06/30/2005 made by Borrower payable to the order of Union First Market Bank, Successor in the original principal amount of $350,000.00").)

When the Holts failed to pay the amounts due under the 2012 Note, the Bank entered into an April 2016 Forbearance Agreement with them. (Mem. Supp. Mot. Sum. J. 3; Atkins Aff. Ex. C "Forbearance Agreements" 1, ECF No. 28-3.) The Bank and the Holts entered into three later Amendments to the Forbearance Agreements: (1) the first in May 2017; (2) the second in November 2017; and, (3) a third in December 2018. (Mem. Supp. Mot. Sum. J. 3; Forbearance Agreements 8, 14, 21.) Patricia Holt signed the 2012 Note and the April 2016 Forbearance Agreement, but she did not sign the 2017–2018 Amendments to the Forbearance Agreements. (2012 Note 2; Forbearance Agreements 6; Bank Resp. 3; Holts Resp. 2.)

Both the 2012 Note and the Forbearance Agreement contain "no waiver" provisions. The 2012 Note states: "Lender may delay or forgo enforcing any of its rights or remedies under this

---

changed its name and is now known as Atlantic Union Bank. (Atkins Aff. Ex. E "Bank Name Change Documents" 1, ECF No. 28-5.)

[6] John Holt originally executed the Ship Mortgage in favor of an entity known as Union Bank and Trust Company. (Atkins Aff. Ex. B. "Ship Mortgage" 1, ECF No. 28-2.) Evidence in the record shows that Union Bank and Trust Company "[m]erged into and subsequently operated as part of Union First Market Bank." (Bank Name Change Docs. 2.) Union First Market Bank later changed its name to Atlantic Union Bank. (*Id.* 1.)

3

Note without losing them." (2012 Note 2.) Similarly, the Forbearance Agreement states "[t]he waiver by the Bank of any breach or any provision of this Agreement or failure to exercise any right, power or remedy under the Notes or related documents shall not be deemed a continuing waiver or a waiver of any subsequent breach or in any way impair any right, power or remedy." (Forbearance Agreements 3.)

The Bank states, and the Holts do not dispute, that

> [p]ayment defaults occurred under the [2012] Note and pursuant to a Forbearance Agreement dated April 20, 2016, a First Amendment to Forbearance Agreement dated May 31, 2017, a Second Amendment to Forbearance Agreement dated November 13, 2017, and a Third Amendment to Forbearance Agreement dated December 7, 2018, . . . the Bank agreed to forbear from exercising its rights and remedies against the Holts and the Vessel until March 14, 2019, after which all amounts became immediately due under the Note.

(Mem. Supp. Mot. Sum. J. 3; Atkins Aff. ¶ 7, ECF No. 28; Forbearance Agreements.) The Holts do not dispute that they "failed to pay all amounts due under the [2012] Note by March 14, 2019." (Mem. Supp. Mot. Sum. J. 3; Atkins Aff. ¶ 8.)

After failing to pay the amounts due under the latest of the Amendments to the Forbearance Agreement, the Bank sent the Holts a letter dated April 4, 2019, notifying them that the 2012 Note and the Ship Mortgage "are in default and have matured." (Atkins Aff. Ex. D "April 4, 2019 Letter" 1, ECF No. 28-4.) The Bank reported that "[a]s of April 3, 2019, the total amount due under the [2012] Note was $136,235.24 in principal, $20,363.31 in interest, $16,213.44 in late charges and $750.00 in loan fees, plus legal fees." (*Id.*) The Bank required the Holts clear the default by paying the amounts owed no later than May 1, 2019, more than one month after the newest due date. (*Id.*) The Bank warned that if the Holts did not pay the amounts owed by May 1, 2019, "the Bank will exercise its rights and remedies under the loan

4

documents." (*Id.*) The Holts do not dispute that they failed to pay all amounts due by May 1, 2019. (Mem. Supp. Mot. Sum. J. 3; Atkins Aff. ¶ 9.)

Pursuant to the 2012 Note, the Bank is entitled to collect its legal fees and collection expenses. (Mem. Supp. Mot. Sum. J. 3; 2012 Note 1.) No dispute exists that under the Ship Mortgage, the Bank also is entitled to collect its "attorney's fees, court costs, and any other expenses incurred or advanced by the Bank to protect its rights . . . or caused by the grantor's default." (Mem. Supp. Mot. Sum. J. 4; Ship Mortgage 2.)

The Bank avers that "[a]s of August 14, 2019," the Holts owed $194,568.71 "under the [2012] Note and the [Ship] Mortgage." (Mem. Supp. Mot. Sum. J. 4; Atkins Aff. ¶ 12.) The Bank maintains that "[i]nterest continues to accrue at the rate of $22.71 per diem (6% per annum)." (Mem. Supp. Mot. Sum. J. 4; Atkins Aff. ¶ 13; 2012 Note 1.)

### B. Procedural Background

After the Holts defaulted on their payment obligations and failed to pay the amounts identified in the April 4, 2019 Letter by the May 1, 2019 deadline, the Bank filed a Verified Complaint in this Court for the arrest and sale of the Thunderball. It also sought a judgment against the Holts. The Court issued a warrant for the arrest of the Thunderball, (ECF No. 9), the vessel secured by the Ship Mortgage and that served as collateral for the 2012 Note. After the Thunderball was arrested, the Court entered an order authorizing the sale of the vessel, (ECF No. 31), and it was sold, (ECF No. 36). Meanwhile, the Holts filed an Answer to the Bank's Verified Complaint. (ECF No. 23.) The Bank then filed the instant Motion for Summary Judgment.

Several months later, the Bank filed a "Line" notifying the Court that a case existed as to John Holt, III, in the United States Bankruptcy Court for the Eastern District of Virginia. (Line 1, ECF No. 32.) The Court then issued an Order asking the Bank and the Holts to address the

Court's ability to consider the Motion for Summary Judgment. (Jan. 23, 2020 Order 1, ECF No. 33.) In the Bank's response, the Bank states that because John Holt, III, had filed for bankruptcy protection, the Court could not consider the Motion for Summary Judgment as to John Holt, III, and should reserve ruling on it until further order from the Bankruptcy Court. (Bank Resp. 3, ECF No. 34.) However, because Patricia Holt did not file for bankruptcy protection, the Bank states that the Court could consider the Motion for Summary Judgment as to Patricia Holt. (*Id.*)

Although the Holts did not respond to the Motion for Summary Judgment, they did file a response to the Court's January 23, 2020 Order. (Holts Resp., ECF No. 35.) Because the Holts raised arguments in opposition to the Motion for Summary Judgment, in the interests of justice, the Court ordered the Bank to reply to the Holts' response. (Feb. 28, 2020 Order 2, ECF No. 37.) The Bank timely replied. (ECF No. 38.) The Court now turns to the Motion for Summary Judgment.

## II. Standard of Review: Motion for Summary Judgment

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Liberty Lobby*, 477 U.S. at 248–50.

"A fact is material if the existence or non-existence thereof could lead a jury to different resolutions of the case." *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 628 (E.D. Va. 2016) (citing *Liberty Lobby*, 477 U.S. at 248). Once a party has properly filed evidence supporting its motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex*

*Corp.*, 477 U.S. at 322–24. The parties must present these in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Liberty Lobby*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his [or her] evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

In the end, the non-moving party must do more than present a scintilla of evidence in its favor.

> Rather, the non-moving party must present sufficient evidence such that reasonable jurors could find by a preponderance of the evidence for the non-movant, for an apparent dispute is not genuine within contemplation of the summary judgment rule unless the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find the facts in his [or her] favor.

*Sylvia Dev. Corp.*, 48 F.3d at 818 (internal quotations, citations, and alterations omitted). The ultimate inquiry in examining a motion for summary judgment is whether there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted).

### III. Analysis[7]

The Court must first address whether it can consider the Motion for Summary Judgment against either John Holt, III, or Patricia Holt. The Court will then turn to the Holts' contention that existing disputes of material fact preclude summary judgment. Next, the Court will consider whether the Bank waived its ability to seek a judgment as to the Holts. Finally, the Court will address the Holts' argument that 12 C.F.R. § 202.7 bars the Bank's ability to collect the debt.

    **A.    Given His Bankruptcy Petition, the Court Will Not Address the Motion for Summary Judgment Against John Holt, III, But Will Reach the Motion for Summary Judgment Against Patricia Holt**

        **1.    Because John Holt, III, Filed For Bankruptcy Protection, The Court Will Not Address the Motion for Summary Judgment Against Him**

Because John Holt, III, filed for bankruptcy protection, the Court cannot reach the Motion for Summary Judgment against him due to the automatic stay imposed by the Bankruptcy Code, pursuant to 11 U.S.C. § 362(a).[8]

---

[7] In a footnote, the Holts argue that the five-year statute of limitations bars the Bank's claims. (Holt Resp. 2 n.1.) However, a six-year statute of limitations applies to the Bank's claims. *See* Va. Code § 8.3A-118 (stating that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note . . ."). In any event, this cause of action did not begin to accrue until 2019, when the Holts defaulted. Here, the Bank demanded in writing that the Holts pay the defaulted amount no later than May 1, 2019. (Apr. 4, 2019 Letter 1.) On May 29, 2019, twenty-eight days after this deadline, the Bank brought suit. Therefore, the applicable statute of limitations does not bar this action.

[8] Section 362(a) states in relevant part:

(a) [A] petition filed under section 301, 302, or 303 of this title, . . . , operates as a stay, applicable to all entities, of--
    (1) the commencement or continuation, . . . of a judicial, administrative, or other action or proceeding against the debtor that was . . . to recover a claim against the debtor that arose before the commencement of the case under this title . . .

11 U.S.C. § 362(a)(1).

8

In its response to the Court's January 23, 2020 Order, the Bank states that "[o]n November 13, 2019, John L. Holt, III, filed a voluntary petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia (Case No. 19-35969)." (Bank Resp. 2, ECF No. 34.) The Bank clarifies that "Patricia R. Holt did not file a bankruptcy petition." (*Id.*) The Holts "concur with [the Bank's] analysis of the current effect of the automatic stay on the pending Motion for Summary Judgment." (Holts Resp. 1, ECF No. 35.)

Because John Holt, III, has filed for bankruptcy protection and an automatic stay applies to him, the Court will reserve ruling on the Bank's Motion for Summary Judgment as to him pending further action by the Bankruptcy Court.

### 2. Even Though Patricia Holt Did Not Sign the Amendments to the Forbearance Agreement, Because She Signed the 2012 Note, She Remains Liable for the Debt

However, Patricia Holt has *not* filed for bankruptcy protection, meaning that no stay exists as to her. The Court will address the Motion for Summary Judgment as to her. Patricia Holt's failure to sign the Amendments to the Forbearance Agreement does not compel a different result.

In its January 23, 2020 Order, the Court recognized that "the Forbearance Agreement and Amendments to the Forbearance Agreement . . . show that Patricia Holt signed the original Forbearance Agreement, but did not sign the Third Amendment." (Jan. 23, 2020 Order 2.) "Also, the First and Second Amendment to the Forbearance Agreement are both missing a page and nothing suggests that Patricia Holt signed these documents." (*Id.*) The Court ordered the Bank and the Holts to address the effect of Patricia Holt's failure to sign these documents. (*Id.*)

9

In its response, the Bank states that "Patricia R. Holt signed the Forbearance Agreement ... but she did not sign any of the amendments to the Forbearance Agreement." (Bank Resp. 3.) The Bank maintains that "Patricia R. Holt's failure to sign the amendments to the Forbearance Agreement has no bearing on her liability under the [2012] Note." (*Id.* 4.) The plain language within the General Provisions of the 2012 Note allows the Court to consider the Motion for Summary Judgment as to Patricia Holt even though she did not sign the Amendments to the Forbearance Agreement.

The 2012 Note contemplates this circumstance because the General Provisions within it specifically provide that even if the Bank makes an amendment to the 2012 Note with only one party, the other party is not released from his or her promise to make payment under the 2012 Note. Specifically, the 2012 Note states:

> Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. . . . All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. My obligations under this Note are joint and several. This means that each person who signs this Note is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.

(2012 Note 2.)

Patricia Holt signed the 2012 Note. (2012 Note 2.) She also signed the April 2016 Forbearance Agreement. (Forbearance Agreements 6.) The plain text of the 2012 Note[9] establishes that Patricia Holt remains obligated to pay the full amount of the debt, even though she did not sign the Amendments to the Forbearance Agreement. (2012 Note 2 (stating that "All

---

[9] Under Virginia law, "[i]t is axiomatic that when the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." *TravCo Ins. Co. v. Ward*, 736 S.E.2d 321, 325 (Va. 2012) (quoting *Barber v. VistaRMS, Inc.*, 634 S.E.2d 706, 712 (Va. 2006)).

such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.").) The 2016 Forbearance Agreement includes a similar, plainly applicable, no waiver provision. (Forbearance Agreements 3 ("[t]he waiver by the Bank of any breach or any provision of this Agreement or failure to exercise any right, power or remedy under the Notes or related documents shall not be deemed a continuing waiver or a waiver of any subsequent breach or in any way impair any right, power or remedy.").)

Therefore, the Court will consider the Motion for Summary Judgment as to Patricia Holt. The Court next turns to the Holts' contention that disputes of material fact precludes summary judgment.

### B. No Dispute of Material Fact Precludes Summary Judgment

In their response to the Court's January 23, 2020 Order, the Holts state that "genuine issues of material fact [exist] as to whether the Bank's conduct in requiring Patricia Holt to execute the original Notes and the Forbearance Agreement violate Federal Regulations." (Holt Resp. 3.) Because the Holts present no evidence to support the claim that a dispute of material fact exists, the Court will grant the Motion for Summary Judgment as to Patricia Holt.

It is not enough for a party opposing a motion for summary judgment to say that disputes of material fact exist. "Rather, the non-moving party must present sufficient evidence such that reasonable jurors could find by a preponderance of the evidence for the non-movant." *Sylvia Dev. Corp.*, 48 F.3d at 818 (internal quotations, citations, and alterations omitted); *see also* E.D. Va. Loc. Civ. R. 56(B); *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (finding that "[a] party opposing a properly supported motion for summary judgment 'may

not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing there is a genuine issue for trial'" (quoting Fed. R. Civ. P. 56(e))).

The Holts present no evidence—thereby entirely failing to carry their burden— to show that any dispute of material fact exists much less one that could preclude summary judgment. *See Sylvia Dev. Corp.*, 48 F.3d at 818; *Bouchat*, 346 F.3d at 522. In contrast, the Holts do not dispute that they have failed to pay the amounts due under the Forbearance Agreements, the 2012 Note, and the Ship Mortgage, meaning that no dispute of material fact exists to preclude summary judgment here. The Court now turns to the Holts' argument that the Bank has waived its ability to seek a judgment against Patricia Holt.

### C. The Bank Has Not Waived Its Ability to Seek a Judgment Against the Holts

The Holts argue that the Bank has waived its ability seek a judgment against Patricia Holt because it "elected to forbear on collection without obtaining Patricia Holt's signature and consent to the Amendments to the Forbearance [A]greement and the 'No Waiver' clauses contained therein." (Holts Resp. 3.) Because the Bank acted diligently in bringing this suit against the Holts—acting within twenty-eight days of their failure to pay the debts identified in the April 4, 2019 Letter—and the 2012 Note and the Forbearance Agreements contained a no waiver clause, the Bank did not waive its ability to seek a judgment against Patricia Holt.

"Waiver is an *intentional* relinquishment of a known right." *Noell Crane Sys. GmbH v. Noell Crane & Serv., Inc.*, 677 F. Supp. 2d 852, 862 (E.D. Va. 2009) (quoting *Stanley's Cafeteria v. Abramson*, 306 S.E.2d 870 (1964)) (emphasis in original). "[T]he burden is on the party asserting waiver to prove that the other party knew of the right and intended to relinquish that right by clear, precise, and unequivocal evidence." *Id.* (citing *Stanley's Cafeteria*, 306 S.E.2d 870).

"The existence of an anti-waiver clause in a contract is evidence of an intent not to relinquish the rights under the contract; however, it does not necessarily control, because, like all contractual rights, the rights under the no waiver clause are themselves subject to waiver." *Bernsen v. Innovative Legal Mktg., LLC*, 885 F. Supp. 2d 830, 833 (E.D. Va. 2012) (internal quotation marks and citations omitted). "Such waiver can be shown by conduct, acts, or a course of dealing." *Id.* (internal quotation marks and citations omitted).

Here, both anti-waiver clauses and the Bank's conduct establish that it did not intend to waive its ability to seek a judgment against Patricia Holt. An anti-waiver clause can be found both in the 2012 Note and the April 2016 Forbearance Agreement. Patricia Holt signed both documents. The 2012 Note states: "Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them." (2012 Note 2.) Similarly, the Forbearance Agreement states "[t]he waiver by the Bank of any breach or any provision of this Agreement or failure to exercise any right, power or remedy under the Notes or related documents shall not be deemed a continuing waiver or a waiver of any subsequent breach or in any way impair any right, power or remedy." (Forbearance Agreements 3.) The no-waiver provisions therefore show "an intent not to relinquish the rights under the contract." *Bernsen*, 885 F. Supp. 2d at 833.

Because the no-waiver provisions are not dispositive of the issue, the Court also examines to the Bank's conduct to assess whether it waived its right to seek a judgment against Patricia Holt. Here, the Bank allowed the Holts to enter into a Forbearance Agreement when they originally defaulted under the 2012 Note. The Bank then allowed the Holts to execute three amendments to the Forbearance Agreement, ultimately making the debt due no later than March 14, 2019. (Forbearance Agreements 22.) Within three weeks of the Holts' failure to pay the debt by the March 14, 2019 deadline—on April 4, 2019—the Bank sent the Holts a demand

letter stating that the full amount of the debt was due no later than May 1, 2019 or the Bank would "exercise its rights and remedies under the loan documents." (Apr. 4, 2019 Letter 1.) When the Holts failed to make the required payment by May 1, 2019, the Bank brought suit within 28 days—on May 29, 2019. By acting quickly to preserve its rights, the Bank did not engage in any conduct that showed an intent to waive its right to seek a judgment against Patricia Holt, much less a clear and unequivocal one. *Noell Crane Sys. GmbH*, 677 F. Supp. 2d at 862.

As such, a review of the no-waiver clauses in the 2012 Note and the April 2016 Forbearance Agreement, demonstrate that the Holts have failed to carry their burden to show that the Bank waived its right to seek a judgment against Patricia Holt. Given this diligent and timely effort to enforce its rights—notwithstanding earlier forbearance agreements—the Bank evinces no indication that it acquiesced to non-payment, it certainly did not provide such a clear and unequivocal intention. *Id.* at 862–63 (stating that "[a]cquiescence, that is the failure to protest or object, is an element of waiver; but does not of itself constitute waiver" rather, waiver "is an *intentional* relinquishment of a known right" and the party claiming waiver must show waiver by "clear, precise, and unequivocal evidence." (emphasis in original)). The Court now turns to the Holts' final contention that the Bank cannot seek a judgment against Patricia Holt because it violated federal regulations when it required her to execute the 2012 Note and the Forbearance Agreement.

### D. Title 12, Section 202.7 of the Code of Federal Regulations Does Not Bar Summary Judgment

As their final belated argument, the Holts suggest that the Bank violated 12 C.F.R. § 202.7[10] when it required Patricia Holt to sign the 2012 Note and the Forbearance Agreement.

---

[10] Section 202.7 of Title 12 of the Code of Federal Regulations provides:

14

They posit that John Holt, III's credit worthiness supported the loan and, in contravention of § 202.7, the Bank required an additional signature from Patricia Holt. Therefore, the Holts argue that these agreements are invalid. This argument fails for two reasons. First, because the Holts failed to raise this argument in their Answer and nothing in the record indicates that the Bank was on notice of this argument, the Holts have waived their right to pursue this argument. Second, even if the Court were to consider this contention, the Court would likely find that it does not preclude summary judgment.

### 1. The Holts Waived This Argument

First, as a matter of law, the Holts' failure to raise 12 C.F.R. § 202.7 in their Answer or at any time prior to their February 2020 response, constitutes waiver of their right to argue that this regulation voids the 2012 Note and the Forbearance Agreement.

"It is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by Federal Rule 8(c)[11] results in the waiver of that defense and its exclusion from the case." 5 ARTHUR R. MILLER, MARY KAY

---

Rule for qualified applicant. Except as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested. A creditor shall not deem the submission of a joint financial statement or other evidence of jointly held assets as an application for joint credit. . . .

Additional parties. If, under a creditor's standards of creditworthiness, the personal liability of an additional party is necessary to support the credit requested, a creditor may request a cosigner, guarantor, endorser, or similar party. The applicant's spouse may serve as an additional party, but the creditor shall not require that the spouse be the additional party.

12 C.F.R. §§ 202.7(d)(1), (5)

[11] Rule 8(c) provides, in pertinent part: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1).

KANE, AND A. BENJAMIN SPENCER, FEDERAL PRACTICE AND PROCEDURE § 1278 (3d ed. 2019) (collecting cases). As to potential notice to the Bank, the United States Court of Appeals for the Fourth Circuit has stated that "a defense is not waived unless the plaintiff suffers 'unfair surprise or prejudice.'" *Bryant Real Estate, Inc. v. Toll Bros., Inc.*, 106 F. App'x 182, 186 (4th Cir. 2004) (citation omitted).

Although the Holts raised a number of affirmative defenses in their Answer, they did not raise 12 C.F.R. § 202.7. Nothing in the record even hints that the Holts have previously raised this defense with the Bank. Therefore, when the Holts responded for the first time to the Motion for Summary Judgment—approximately six months after their response was due and without requesting an extension—and raised 12 C.F.R. § 202.7 for the first time, the Bank suffered "unfair surprise or prejudice." *See Bryant Real Estate, Inc.*, 106 F. App'x at 186. Thus, the Holts waived their right to rely on this defense.

### 2. Even if the Court Were to Consider the Merits of the Holts' 12 C.F.R. § 202.7 Defense It Would Likely Fail

Second, even if the Court were to reach the merits of a § 202.7 defense, the Court would likely find that the defense fails because nothing in the record indicates: (1) that John Holt, III, was a qualified applicant; and, (2) that the Bank *required* Patricia Holt to sign the 2012 Note or the Forbearance Agreement.

Section 202.7 of Title 12 of the Code of Federal Regulations provides, in pertinent part:

> Rule for qualified applicant. Except as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested. A creditor shall not deem the submission of a joint financial statement or other evidence of jointly held assets as an application for joint credit. . . .
>
> Additional parties. If, under a creditor's standards of creditworthiness, the personal liability of an additional party is necessary to support the credit requested, a creditor

16

may request a cosigner, guarantor, endorser, or similar party. The applicant's spouse may serve as an additional party, but the creditor shall not require that the spouse be the additional party.

12 C.F.R. §§ 202.7(d)(1), (5).

The Holts argue that "[b]y entering into three Amendments to the Forbearance Agreement without requiring the signature of Patricia Holt, the Bank acknowledged that John Holt[, III's] creditworthiness alone was sufficient. From this the logical inference is that, by requiring Patricia Holt's signature on the original Notes and on the Forbearance Agreement, the Bank violated" 12 C.F.R. § 202.7(d)(1). (Holts Resp. 2.)

As with their contention about the existence of a dispute of material fact, the Holts present no evidence to support their contention that John Holt, III's creditworthiness satisfied the requirements of 12 C.F.R. § 202.7. Therefore, even if the Court were to consider the merits of the Holts' § 202.7 defense, such an unsupported allegation would fail to preclude summary judgment. *See Bouchat*, 346 F.3d at 522 (finding that "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing there is a genuine issue for trial'" (quoting Fed. R. Civ. P. 56(e))).

Relatedly, the Holts have presented nothing to show that the Bank *required* Patricia Holt to sign the 2012 Note and the Forbearance Agreement. Because the Holts have presented no evidence to suggest that the Bank *required* Patricia Holt to sign the 2012 Note and the Forbearance Agreement, even if the Court were to consider the Holts' 12 C.F.R. § 202.7 defense, without additional factual support, this defense would not preclude summary judgment. *See id.*

For these reasons, even if the Court were to consider the merits of the Holts' § 202.7 defense, the Court would likely conclude that it does not preclude summary judgment as to Patricia Holt.

### IV. Conclusion

For the foregoing reasons, the Court will grant the Motion for Summary Judgment as to Patricia Holt. Because the Bankruptcy Code has imposed an automatic stay in this matter as to John Holt, III, the Court will not reach the Motion for Summary Judgment as to John Holt, III, until further order from the Bankruptcy Court. The Court will direct the Clerk to stay this matter as to John Holt, III.

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 3/17/20
Richmond, Virginia